Charles R. Jamal v. Commissioner.
Jamal v. Commissioner
Docket No. 56226.
United States Tax Court
T.C. Memo 1956-129; 1956 Tax Ct. Memo LEXIS 164; 15 T.C.M. (CCH) 660; T.C.M. (RIA) 56129; May 25, 1956
*164 Roy E. Graham, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income taxes, including victory tax for 1943, and additions thereto for fraud and, as to 1950, for failure to file a declaration as follows: Additions to
Addition to
Calendar
the tax under
the tax under
Year
Income Tax
section 293(b)
section 294(d)
1941
$ 166.92
$ 83.46
1942
626.79
313.40
1943
8,213.41
3,836.73
1944
1,686.30
843.15
1945
3,119.23
1,559.62
1946
22,998.94
11,522.23
1947
2,974.35
1,487.18
1948
16,376.57
8,188.29
1949
2,680.25
1,340.13
1950
9,306.29
4,599.18
$501.02
Total
$68,149.05
$33,773.37
$501.02 No appearance at the hearing was entered by or on behalf of petitioner. Evidence was introduced by respondent to sustain his burden of proof as to the fraud penalties, on the basis of which the following findings are made. Findings of Fact Petitioner, during the calendar years 1941 through 1950, lived in Allegheny County in the vicinity of Pittsburgh, Pennsylvania. He filed income tax returns for these years with the collector of internal revenue *165 for the twenty-third district of Pennsylvania. Petitioner was born in Turkey on July 17, 1894, came to this country in 1909, and became a naturalized citizen of the United States in 1931. After his arrival in this country, he was employed, successively, for about 1 year as a machine operator in New Hampshire, for about 6 years as a leather treater in Chicago, Illinois, for about 1 year as a copper miner in Montana, for about 2 years as a construction worker in Akron, Ohio, and for about 4 years as a labor foreman for the Pennsylvania Railroad at Derry, Pennsylvania. In 1924 petitioner moved to Clairton, Pennsylvania, where he operated a confectionery store until 1933. From 1934 until June 27, 1945 he was in the restaurant business in Clairton. At the close of 1940 the only asset owned by petitioner was a bank account of $946.55. In 1945 petitioner sold his interest in his restaurant business and purchased a roadside bar carried on the books at $11,760. He began to rebuild and remodel it to convert it into an elaborate night club which he named the Ankara. Within a few years it became one of the leading night clubs in the Pittsburgh area. By 1950 petitioner's equity in the night *166 club was $130,684.74. According to the books of the Ankara and other sources, petitioner's investment in the night club in 1950 consisted of license and goodwill (purchased), $9,000; inventory, $22,195.11; fixtures, equipment and improvements, $78,506.84; and building and land, $91,700. The night club also had bank accounts and petty cash totaling $13,088.73. In 1947 petitioner purchased a new Plymouth, which he disposed of in 1949. He later bought a new 1949 DeSoto, which he traded in on the purchase of a 1950 Buick, and in 1950 he bought a new Cadillac. Respondent computed petitioner's income on a net worth and cash expenditures basis. Respondent's agents based their determination on the statements rendered by banks with whom petitioner did business, records of the Treasury Department Savings Bonds Division, the signed statements of petitioner as to his living expenses, as well as his net worth, the invoices for the purchase of three automobiles, the statement of petitioner's accountant showing furniture and equipment of the Ankara, and other evidence based upon public records or petitioner's own books and records, with the exception of estimated living expenses of petitioner *167 from 1941 to 1945. Petitioner submitted to respondent's agents a statement of his living expenses which, as revised to conform to the collector's records and to include expenditures for food, were: $3,450.48 for 1946, $3,351 for 1947, $2,351 for 1948, $2,376 for 1949, and $2,351 for 1950. Respondent's agents then estimated that petitioner's living expenses for the earlier years were: $2,534 for 1941, $2,629.69 for 1942, $3,005.65 for 1943, $3,797.06 for 1944, and $4,108.88 for 1945. Shown in the following schedule is the income and tax thereon which petitioner reported for each of the years in issue, his corrected income as shown by his cash expenditures and increase in net worth, and the difference or unreported income: Reported
Reported
Corrected
Unreported
Year
Income
Tax
Income
Income
1941
$ 1,778.16
$ 95.69
$ 3,416.34
$ 1,638.18
1942
2,997.48
471.46
6,073.66
3,076.18
1943
4,088.00
300.78
21,331.91
17,243.91
1944
4,524.82
853.00
10,029.42
5,504.60
1945
6,690.20
1,450.16
14,842.48
8,152.28
1946
5,866.64
1,012.06
48,225.07
42,358.43
1947
* (4,548.57)
None
12,701.98
17,250.55
1948
* (12,686.04)
None
40,838.00
53,524.04
1949
* (6,205.23)
None
14,147.35
20,352.58
1950
1,627.53
152.00
24,157.91
22,530.38
Total
$ 4,132.99
$4,335.15
$195,764.12
$191,631.13
*168 According to his reported income, petitioner's most profitable year was 1945 when he reported a net income of $6,690.20, and his worst year was 1948 when he claimed a net loss of $12,686.04. His total net income reported from 1941 through 1950 was $4,132.99. During these years, however, petitioner's net worth increased from $1,828.89 at the end of 1941 to $40,565.08 at the end of 1945, and $163,158.33 at the end of 1950. His net worth in 1945 included a home and household furnishings totaling $13,250, bank accounts totaling $4,709.56, and United States Government bonds costing $10,800. Respondent's agents pursued all leads given to them by petitioner and conducted inquiries at sources available to them to determine and allow petitioner all deductions to which he was entitled and to exclude all items which did not reflect taxable income. In 1933 petitioner was indicted for conspiracy to conduct a lottery and operating a lottery. He was found not guilty on the first charge, but was convicted, fined, and served a sentence on the second charge. Petitioner understated his income in each of the years in issue, and some *169 part of the deficiency in each year is due to fraud with intent to evade tax. Opinion As established by our findings petitioner consistently and regularly understated his income by large proportionate amounts for each of the 10 years to which the present deficiencies relate. This, coupled with the other evidence in the record, justifies the conclusion that petitioner was guilty of fraud. See ; , certiorari denied ; , affd. (C.A. 10) . Our finding of fact to that effect disposes of the only issue. Decision will be entered for the respondent. Footnotes
*. Losses claimed by petitioner in his income tax return.↩